UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-cv-663-MOC

| LATREASS BRITTIAN, | ) | |
|---|---|---|
| *individually and on behalf of all others similarly situated*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| EXTENDED STAY AMERICA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** comes before the Court on Defendants' partial motion to dismiss.[1] (Doc. No. 71). Defendants move to dismiss Count I of Plaintiff's First Amended Class Action Complaint ("Amended Complaint") under Federal Rule of Civil Procedure 12(b)(6). Plaintiff opposes Defendants' motion. (Doc. No. 74).

I. BACKGROUND

Plaintiff Latreass Brittian, individually and on behalf of a nationwide class, raises a common law breach of contract claim against Defendants. (Doc. No. 67 ¶¶ 120–28). Brittian alleges that she prepaid $1,777.50 for a reservation at the Extended Stay America ("ESA") hotel in Norcross, Georgia. (Id. ¶ 16). That reservation—from January 11 to February 8, 2022—was the second of Brittian's back-to-back stays at the Norcross hotel. During her first stay—from

---

[1] Defendants ESA Management, LLC, ESH Hospitality Strategies, LLC, ESH Strategies Franchise, LLC, and ESH Strategies Branding, LLC, collectively "ESA Defendants," move to dismiss. (Doc. No. 71). The ESA Defendants' motion is joined in part by TWC Norcross LLC d/b/a Extended Stay America Suites Norcross, Three Wall Capital LLC, and Aimbridge Hospitality, LLC, collectively "TWC Defendants." (Doc. No. 72).

1

December 14, 2021, to January 11, 2022—Brittian complained to hotel staff and management about the condition of her room. (Id. ¶¶ 14–15). The hotel manager offered Brittian a refund of $411.36, then placed her on a "Do Not Rent" list. (Id. ¶¶ 15, 19).

On the morning of January 11, 2022, Brittian attempted to check in for her second stay at the Norcross hotel. She also raised the refund issue with the hotel manager, who had failed to process the promised amount. (Id. at ¶ 17). Brittian was given key cards to her new room, but they did not work. When Brittian returned to the front desk, a hotel staff member helped her access the room. (Id.). Unbeknownst to Brittian, she was never formally checked in to her second reservation. (Id. ¶ 18). Instead, she was designated a "no show" in the hotel's computer system. (Id. ¶ 20).

The next morning, Brittian again found herself locked out of her new room. When she returned to the front desk for new key cards, hotel staff pulled up Brittian's reservation on their property management system. The staff were confronted with a two-part message. First, Brittian was on the "Do Not Rent" ("DNR") list. (Id. ¶ 22). Second, staff were not to disclose that fact to Brittian. (Id.). The front desk staff told Brittian that her reservation could not be accommodated due to her "no show" status. (Id. ¶ 21).

Brittian then requested a refund for her prepaid reservation. (Id. ¶ 24). Hotel staff informed her that the reservation was nonrefundable and denied her request. (Id.). Staff also denied Brittian's request to return to her room and retrieve her belongings. They continued to deny Brittian access until law enforcement instructed hotel staff to allow Brittian to retrieve her belongings. (Id. ¶ 28).

Brittian alleges that ESA hotels, including franchisees, use a central reservation and property management system that includes a nationwide "Do Not Rent" list. (Id. ¶¶ 79–82). She

further alleges that ESA maintains a policy and practice of using the list to "refuse accommodations to guests who complain about the poor conditions . . . or unfair business practices at Extended Stay America hotels." (Id. ¶ 85). Moreover, Brittian claims, ESA does not inform guests they have been placed on the list, and such guests may continue making non-refundable prepaid reservations at ESA hotels only to be denied accommodation at the front desk. (Id. ¶¶ 86–88, 95, 97). This, Brittian argues, amounts to "a nationwide practice by Extended Stay America hotels to remove guests while wrongfully keeping their money." (Id. ¶ 89).

Count I of Brittian's Amended Complaint alleges a breach of contract claim. (Doc. No. 67 ¶¶ 120–128). Specifically, Brittian asserts that Plaintiff and members of the Nationwide Class entered an agreement with Defendants to provide lodging in exchange for fees. (Id. ¶ 122). According to Brittian, Plaintiff and class members fulfilled their end of the bargain by paying Defendants, but Defendants breached by denying Plaintiff and class members the agreed accommodation at ESA hotels. (Id. ¶ 125). Consequently, Brittian claims, Plaintiff and class members suffered damages including, but not limited to, deprivation of accommodation at an ESA hotel. (Id. ¶ 127). Brittian's breach claim refers to an "Agreement" attached to the amended complaint. (Id. ¶ 125). That "Agreement" is not a contract between Brittian (or class-members) and Defendants to provide lodging in exchange for fees, but instead ESA Defendants' website Terms and Conditions. (Doc. No. 71 at 2).

## II. STANDARD OF REVIEW

Defendants move to dismiss under Rule 12(b)(6). A Rule 12(b)(6) motion tests the sufficiency of the complaint by asking whether the Plaintiff "has stated a cognizable claim." Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 452 (4th Cir. 2012). Reviewing

3

a 12(b)(6) motion, the Court must accept as true all factual allegations in Plaintiff's complaint and draw all reasonable inferences therefrom in the light most favorable to Plaintiff. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). That said, to survive Defendants' 12(b)(6) motion, Plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level," such that the complaint contains "enough facts to state a claim to relief that is plausible on its face. Id. at 570. Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to survive a 12(b)(6) motion. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). Instead, a complaint survives only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Id. at 679 (citations omitted).

### III. DISCUSSION

In North Carolina, to recover for breach of contract the Plaintiff must establish two elements: "(1) existence of a valid contract and (2) breach of the terms of that contract." Arku v. Wells Fargo Bank, Nat'l Ass'n, 621 F. Supp. 3d 602, 608 (W.D.N.C. 2022). With respect to the second element (breach), the Plaintiff must identify "an obligation contained in [the] agreement that has not been fulfilled by the opposing party." Tasz, Inc. v. Indus. Thermo Polymers, Ltd., 80 F. Supp. 3d 671, 681 (W.D.N.C. 2015). "A contract is simply a promise supported by consideration, which arises . . . when the terms of an offer are accepted by the party to whom it is extended." McLamb v. T.P. Inc., 173 N.C. App. 586, 588 (2005) (quoting 17 C.J.S. Contracts § 2 (1999)). Defendants move to dismiss Plaintiff's breach of contract claim on four grounds.

First, Defendants argue that Plaintiff's breach claim should be dismissed because Plaintiff fails to specifically allege which contract provision was breached. (Doc. No. 71 at 5). In fact,

4

Defendants claim, Plaintiff's complaint fails to "point to, quote, or otherwise reference the language of the contract that supposedly provides for the exchange that Plaintiff alleges: that if Plaintiff pays lodging fees, she is guaranteed accommodation." (Id.). But Defendants' argument is difficult to square with their admission that the Court must credit Plaintiff's factual allegations, including that Plaintiff made a prepaid reservation before being denied accommodation and refused a refund. (Id. at 2–3).

At the motion to dismiss stage, Plaintiff has sufficiently alleged the existence of a valid contract between the parties for Defendants "to provide lodging in exchange for lodging fees." (Doc. No. 67 ¶ 122). The Court infers that when Plaintiff "extended her stay by prepaying $1,777.50 for a second reservation from January 11, 2022[,] through February 8, 2022[,]" Plaintiff entered a second contract exchanging money for lodging. By accepting Plaintiff's money, denying her lodging, and refusing to refund her prepayment, Defendants deprived Plaintiff of the benefit of her bargain.

The non-binding cases cited by Defendants are distinguishable. In Sides v. Athene Annuity & Life Co., plaintiff beneficiaries sued defendant annuity company for breach of contract after a check issued by defendant was fraudulently cashed. No. 3:19CV703-GCM, 2020 WL 2114380, at *2 (W.D.N.C. May 4, 2020). Plaintiffs claimed that defendant's failure to ensure plaintiff beneficiaries' physical receipt of the check, and failure to list both trustees as payees on the check to reduce fraud risk, amounted to breach of contract. Id. at 3. The Court dismissed plaintiffs' claims, concluding that no contract language required defendant to ensure plaintiffs' physical receipt of the check or list both beneficiaries as payees, and that plaintiffs thus "failed to state a plausible claim." Id. But in Sides, the plaintiffs' claims were based on the form of contract performance, not its substance. Put another way, the Sides plaintiffs' claims

5

pertained to the manner in which the contract would be performed, not whether it would be performed at all. Here, by contrast, Plaintiff alleges she was completely denied the benefit of her bargain. Thus, Sides would only be factually analogous to this case if the annuity company had simply refused to pay.

Defendants attempt to split hairs, intimating that Plaintiff was not denied the benefit of her bargain because there is no evidence that Plaintiff paid for guaranteed accommodation. To contextualize Defendants' argument, imagine if in Sides defendant annuity company had refused to pay on the basis that plaintiff beneficiaries had bargained only for the possibility of receiving a death benefit check, not a guarantee. Defendants' reasoning subverts common sense. When a consumer books a hotel room, they don't understand themselves as entering an option contract under which they might have the opportunity to secure lodging. Instead, the consumer anticipates a straightforward exchange of money for lodging.

Defendants further argue that because the ESA website's Terms and Conditions (the "Agreement" referenced in Plaintiff's amended complaint) do not contemplate an agreement to exchange payment for lodging, Plaintiff cannot sue for breach of any such agreement. (Doc. No. 71 at 6). But the Court has already found that Plaintiff has sufficiently alleged that Defendants agreed to provide Plaintiff with lodging in exchange for money when Plaintiff made her pre-paid hotel reservation. True, the Terms and Conditions contain an "entire agreement" clause. According to that clause, the Terms and Conditions

> set forth the entire understanding and agreement between Extended Stay America and you **with respect to the subject matter hereof** and supersede any prior or contemporaneous understanding, whether written or oral.

(Doc. No. 67-1 at 5) (emphasis added). The subject matter of the Terms and Conditions does not contain the names of the parties or the price to be paid for performance, two essential terms of a

6

contract under North Carolina law. See Apple Tree Ridge Neighborhood Ass'n v. Grandfather Mountain Heights Prop. Owners Corp., 206 N.C. App. 278, 283 (2010). Therefore, the Court will not construe the Terms and Conditions to constitute the entire agreement of the parties with respect to Plaintiff's January 11 to February 8, 2022, reservation. Thus, the fact that the ESA website's Terms and Conditions do not explicitly include an agreement to exchange payment for lodging does not require this Court to dismiss Plaintiff's breach of contract claim.

Defendants also cite this Court's decision in Sports Med Properties, LLC v. Talib. No. 319CV00082FDWDSC, 2019 WL 3403372, at *3 (W.D.N.C. July 26, 2019). But Defendants' Talib analogy fails for the same reason as their appeal to Sides. In Talib, plaintiff claimed that defendant breached a project management agreement by failing "to oversee and manage the design and construction" of the project. Id. at *2. The Court dismissed plaintiff's claim, finding that plaintiff didn't allege failure to perform services for which the parties had contracted because the agreement did not impose liability on defendant for design defects. Id. at *3. Here, however, Plaintiff does allege that Defendants failed to perform services for which the parties had contracted, i.e., providing lodging. Talib would control this case if Plaintiff were suing on Defendants' failure to replace her bedding or towels or offer complimentary waffles every morning. But that is not the case. Instead, the specific contractual provision Plaintiff claims was breached was not just part of the alleged agreement (as in Sides and Talib), but central to the agreement.

Second, Defendants argue the Court should dismiss Plaintiff's breach of contract claim because her complaint fails to "allege facts that would render the Terms and Conditions applicable to Plaintiff or the class she claims to represent." (Doc. No. 71 at 6). But Defendants misapprehend Plaintiff's contract claim. Plaintiff contends that the parties reached the essential

7

terms of their agreement when Plaintiff reserved lodging by pre-paying through Defendants' reservation system. (Doc. No. 67 ¶ 16). Thus, even if the Terms and Conditions did not apply to Plaintiff, dismissal would not necessarily follow: Plaintiff has alleged a valid lodging contract separate from the Terms and Conditions sufficient to survive Defendants' 12(b)(6) motion.

Third, Defendants claim that Plaintiff's breach claim should be dismissed because the Terms and Conditions contain "express and unambiguous language" permitting Defendants to cancel reservations. (Doc. No. 71 at 7). The disclaimer in question reads

> WE RESERVE THE RIGHT TO CANCEL OR MODIFY RESERVATIONS WHERE IT APPEARS THAT A CUSTOMER HAS ENGAGED IN FRAUDULENT OR INAPPROPRIATE ACTIVITY OR UNDER OTHER CIRCUMSTANCES WHERE IT APPEARS THAT THE RESERVATIONS CONTAIN OR RESULTED FROM A MISTAKE OR ERROR.

(Doc. No. 67 at 4) (capitalization in original). According to Defendants, this clause contradicts Plaintiff's argument that the contract required Defendants to provide accommodation in exchange for prepaid lodging fees. (Doc. No. 71 at 8).

As an initial matter, the Court notes that the disclaimer is certainly not express or unambiguous. "Inappropriate activity" and "other circumstances" and "mistake or error" remain undefined. Moreover, Defendants fail to allege that any conditions justifying cancellation were present in this case.

What's more, as Plaintiff argues, Defendants' interpretation of their disclaimer may be unenforceable under North Carolina law. For Defendants' interpretation to be correct—i.e., that the contract does not <u>require</u> Defendants to provide accommodation in exchange for lodging fees—the disclaimer must be interpreted to allow Defendants to unilaterally terminate the contract prior to performance. But this interpretation of the disclaimer would render it "wholly repugnant" to the purpose of the contract, essentially nullifying the agreement by permitting

8

Defendants to terminate it at their convenience after receiving payment from customers. See Stanley v. Cox, 253 N.C. 620, 635 (1961). Thus, Defendants' interpretation of the disclaimer, permitting Defendants to terminate the contract based on unilateral "mistake or error," must be rejected.[2] Id.

The Court interprets Defendants' disclaimer to incorporate ordinary contract principles like mutual mistake and fraud. Under such an interpretation, Plaintiff's breach of contract claim is not "inconsistent with the plain language of the contract incorporated into the Complaint." Sports Med Props., 2019 WL 3403372, at *3. Plaintiff contracted to receive lodging in exchange for money. Plaintiff having prepaid for her lodging, Defendant was bound to perform subject to fraud or mutual mistake or be found in breach.

Fourth and finally, Defendants contend that Plaintiff's complaint fails to allege that the ESA Defendants are responsible for denying Plaintiff accommodation. While Plaintiff's complaint alleges that "hotel staff" denied her accommodation, Plaintiff acknowledges that the hotel in question is owned by Defendant Three Wall Capital, LLC, operated by Defendant TWC Norcross LLC, and managed by Defendant Aimbridge Hospitality. (Doc. No. 71 at 8). Because Plaintiff failed to specifically allege that any ESA Defendant controlled the hotel staff or otherwise denied Plaintiff accommodation, Defendants argue, Plaintiff's breach claim should be dismissed. (Id.).

Plaintiff responds that her complaint alleges facts supporting two theories of liability against the ESA Defendants on her breach of contract claim: actual agency and apparent agency. (Doc. No. 74 at 19). Plaintiff's complaint alleges that the ESA Defendants are franchisors. (Doc. No. 67 ¶ 54). In North Carolina, "[a] franchisor is vicariously liable for the tortious acts of its

---

[2] Plaintiff's unconscionability argument further counsels against Defendants' proposed interpretation of the disclaimer. (Doc. No. 74 at 17–18).

9

franchisee when an agency relationship exists and the acts are committed within the scope of the agent's authority." Thomas v. Freeway Foods, Inc., 406 F. Supp. 2d 610, 617 (M.D.N.C. Dec. 22, 2005) (quoting Miller v. Piedmont Steam Co., 137 N.C. App. 520, 528 (2000)).

Thus, Plaintiff's actual agency theory vis-à-vis the ESA Defendants survives the motion to dismiss so long as Plaintiff's complaint contains facts from which the Court could reasonably infer an agency relationship existed. In North Carolina, "the existence of an actual agency relationship 'depends on the degree of control retained by the principal over the details of the work as it is being performed.'" Thomas, 406 F. Supp. 2d at 617 (quoting Vaughn v. N.C. Dep't of Human Res., 296 N.C. 683, 686 (1979)). Relevant here, Plaintiff's amended complaint alleges that ESA Defendants (1) maintain a nationwide "Do Not Rent" list through the ESA reservation and property management systems; (2) maintain a nationwide policy and practice of using the list to refuse accommodation to guests; and (3) permit hotel staff to place on the list guests who complain about poor conditions or unfair business practices. (Doc. No. 67 ¶¶ 82, 85, 83). Plaintiff's complaint further alleges that ESA hotels' use of the DNR list constitutes a "nationwide, top-down policy and practice." (Id. ¶¶ 89, 91).

Plaintiff thus avers that ESA Defendants control employees (including franchise employees) by directing staff to place guests (like Plaintiff) on the DNR list and subsequently to deny them accommodation. Likewise, the hotel staff's decision to refuse a refund in this case was based on ESA Defendants' policy that prepaid reservations are nonrefundable. (Id. ¶ 24). Thus, Plaintiff alleges sufficient facts from which the Court can infer that ESA Defendants are liable for the actions of TWC Defendants under an actual agency theory.

In sum, for the reasons stated above, the Court denies Defendants' partial motion to dismiss.

10

Case 3:22-cv-00663-MOC-DCK   Document 78   Filed 04/26/24   Page 10 of 11

**ORDER**

**IT IS, THEREFORE, ORDERED** that Defendants' partial motion to dismiss (Doc. No. 71) is **DENIED**.

Signed: April 26, 2024

Max O. Cogburn Jr
United States District Judge